UNITED STATES DISTRICT COURT
FOR THE DISTRICT  · COLUMBIA

-------------------------------------------------------------X

SUSAN WEINSTEIN individually, as
Co-Administrator of the Estate of
Ira William Weinstein, and as natural
guardian of plaintiff David Weinstein (minor),
230 North Kentucky Avenue
Massapegna, NY  11758

JEFFREY A. MILLER as Co-Administrator
of the Estate of Ira William Weinstein,
Westerman Shapiro Draghi & Miller, LLP
600 Old Country Road, Suite 500
Garden City, New York 11530

JOSEPH WEINSTEIN,
18 Hapalmach Street
Jerusalem, Israel

JENNIFER WEINSTEIN HAZI,
17 Gvirtzman Street
Jerusalem, Israel

DAVID WEINSTEIN (minor) by
his guardian and next friend Susan Weinstein,
10/1 Ha'asor Street
Maale Adumim, Israel
                                        Plaintiffs,

    -    against  -

THE ISLAMIC REPUBLIC OF IRAN
Ministry of Foreign Affairs
Khomeini Avenue
United Nations Street
Teheran, Iran,

THE IRANIAN MINISTRY OF INFORMATION AND SECURITY
Pasdaran Avenue
Golestan Yekom
Teheran, Iran

AYATOLLAH ALI HOSEINI KHAMENEI
Supreme Leader of the Islamic Republic of Iran
Office of the Supreme Leader
Palestine Street
Teheran, Iran

ALI AKBAR HASHEMI-RAFSANJANI
Former President of the Islamic Republic of Iran
Presidential Office
Palestine Street
Teheran, Iran

ALI FALLAHIAN-KHUZESTANI
Former Minister of Information and Security
Ministry of Information and Security
Pasdaran Avenue
Golestan Yekom
Teheran, Iran

                                        Defendants.

-------------------------------------------------------------X

Civil Action No.:

**COMPLAINT**

FILED

OCT 2 7 2000

CASE NUMBER  1:00CV02601

JUDGE:  Royce C. Lamberth

DECK TYPE:  Civil General

DATE STAMP:  10/27/2000



Plaintiffs, by their attorneys Westerman Shapiro Draghi & Miller, LLP, as and for their complaint against the defendants herein, respectfully allege as follows:

## NATURE OF ACTION

1. This is an action brought pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §1605 *et seq.*, by the distributees and administrators of decedent Ira William Weinstein, for a money judgment against Iran and its agents for wrongful death, personal injury and related torts.

2. Ira Weinstein, an American citizen, was killed on February 25, 1996, in the terrorist bombing of a passenger bus in Jerusalem, Israel. This Court recently found Iran and the other defendants herein liable under 28 U.S.C. §1605 *et seq.* for the death of American citizens Matthew Eisenfeld and Sara Duker in that same bus bombing. (Eisenfeld et al. v. The Islamic Republic of Iran, et al. Civ. No. 98-1945(RCL)).

3. Ira Weinstein did not immediately die from the bombing; he suffered excruciating and conscious pain for seven weeks before dying. His pain and suffering included fourth degree burns over 40% of his body (i.e., burns which completely penetrated and destroyed his skin and damaged his underlying muscle tissue), severe damage to his lungs, multiple pieces of shrapnel lodged in his body, general systematic failure, renal failure, severe infection, multiple surgeries including the amputation of both of his legs, and abdominal surgery to halt an infection caused by shrapnel. Ira Weinstein's abdominal cavity could not be closed following surgery due

to his other injuries, and his abdomen remained open, covered only by a netting, for seven weeks until he died.

4. At the time of his death, Ira Weinstein was 53 years old, married and the father of three children.

## JURISDICTION

5. This court has jurisdiction over this matter and over defendants pursuant to 28 U.S.C. §§1330(a), 1331, 1332(a)(2), 1605(a)(7) and 28 U.S.C.A. §1605 note, *Civil Liability for Acts of State-Sponsored Terrorism*. These recently-enacted counterterrorism provisions create federal causes of action for wrongful death, personal injury and related torts against state sponsors of terrorism and their officials, employees and agents.

## VENUE

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(f)(4).

## PARTIES

7. Plaintiff Susan Weinstein is, and at all times relevant hereto was, a citizen of the United States, the widow of decedent Ira Weinstein, co-administrator of the Estate of Ira Weinstein and the natural guardian of plaintiff David Weinstein (minor). Susan Weinstein brings this action individually, on behalf of the Estate of Ira Weinstein and on behalf of plaintiff David Weinstein (minor).

8. Plaintiff Jeffrey A. Miller is, and at all relevant times was, a citizen of the United States, and is the co-administrator of the Estate of Ira Weinstein.

3

9.  Plaintiffs Joseph Weinstein, Jennifer Weinstein Hazi and David Weinstein (minor) are, and at all times relevant hereto were, citizens of the United States, and the children of decedent Ira Weinstein and plaintiff Susan Weinstein.

10. Defendant The Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. §1603, and has been designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)).

11. Defendant The Iranian Ministry of Information and Security is, and at all times relevant hereto was, the Iranian intelligence service responsible for providing material support and resources, and sponsoring the terrorists who planned and executed the extrajudicial killing of Ira Weinstein. Within the scope of its agency and office, The Iranian Ministry of Information and Security provided material support and resources for terrorism and performed actions which caused the death of decedent Ira Weinstein.

12. Defendant Ayatollah Ali Hoseini Khamenei is, and at all times relevant hereto was, the Supreme Leader of defendant Iran. Within the scope of his office, employment and agency, defendant Ayatollah Ali Hoseini Khamenei performed actions which caused the death of decedent Ira Weinstein.

13. Defendant Ali Akbar Hashemi-Rafsanjani is, and at all times relevant hereto was, the former president of defendant Iran. Within the scope of his office, employment and agency, defendant Ali Akbar Hashemi-Rafsanjani performed actions which caused the death of decedent Ira Weinstein.

4

14. Defendant Ali Fallahian-Khuzestani is, and at all times relevant hereto was, the former Minister of Information and Security for defendant Iran. Within the scope of his office, employment and agency, Ali Fallahian-Khuzestani performed actions which caused the death of decedent Ira Weinstein.

## STATEMENT OF FACTS

15. Decedent Ira Weinstein was a 53 year-old American citizen and a native of New York. At the time of his death Ira Weinstein was married to plaintiff Susan Weinstein, and the couple had three children, Joseph, Jennifer and David.

16. At approximately 6:40 A.M. on February 25, 1996, Ira Weinstein boarded the number 18 Egged bus in Jerusalem, Israel.

17. At approximately 6:45 A.M., as the number 18 Egged bus reached the intersection of Jaffa and Sarei Yisrael Streets, in Jerusalem, Israel, Majdi Abu Warduh, a terrorist trained by, belonging to and acting on behalf of the HAMAS terrorist organization who had boarded the number 18 Egged bus, disguised as a harmless passenger, willfully and deliberately detonated a massive explosive charge.

18. The bombing described herein completely destroyed the bus, killed 23 persons and injured 49 others (the "Terrorist Bombing"). Among those killed were American citizens Ira Weinstein, Matthew Eisenfeld and Sara Duker.

19. The Terrorist Bombing injured Ira Weinstein, causing him to suffer severe and devastating pain and suffering, and causing his death approximately seven weeks later.

20. After the Terrorist Bombing, Ira Weinstein was rushed to the Hadassah Medical Center in Jerusalem, Israel, where physicians informed plaintiffs that Ira Weinstein's condition was critical, and that he had little chance of surviving.

21. Ira Weinstein suffered for a full seven weeks before finally succumbing to his injuries and dying on April 13, 1996.

22. The injuries and suffering caused by defendants to decedent Ira Weinstein included the following:

(a)     Ira Weinstein suffered fourth degree burns over 40% percent of his body, which caused him excruciating pain, lasting from the time of the bombing until his death;

(b)     Ira Weinstein's lungs were severely damaged by the bombing, and he had to be mechanically respirated from the time of the bombing until his death;

(c)     Ira Weinstein underwent approximately a half dozen surgeries from the time of the bombing until his death;

(d)     Ira Weinstein was struck by multiple pieces of shrapnel from the bombing, which lodged in his body;

(e)     Following abdominal surgery to halt an infection caused by shrapnel, Ira Weinstein's abdominal cavity could not be surgically closed due to his other injuries, and his abdomen remained open, covered only by a netting, for nearly seven weeks until his death;

(f)     Ira Weinstein suffered general systemic failure, including renal failure, and underwent dialysis of the kidneys and blood filtration from soon after the bombing until his death; and

(g)     Ira Weinstein suffered the amputation of both of his legs, which became dangerously infected due to severe burns.

23. Between the time of the bombing on February 25, 1996 until his death a full seven weeks later on April 13, 1996, decedent Ira Weinstein was conscious, and in full possession of his mental faculties.  The injuries described herein caused Ira Weinstein excruciating and conscious pain and suffering during this entire period. Additionally, throughout this period, Ira Weinstein was aware of the severity of his injuries, and understood that his death was inevitable and imminent.

24. As a result of the Terrorist Bombing caused by defendants' actions, decedent Ira Weinstein was hospitalized for 49 days, until his passing on April 13, 1996.

25. During his hospitalization, Ira Weinstein was visited regularly by his wife, Susan Weinstein, and children, Joseph Weinstein, Jennifer Weinstein Hazi and David Weinstein, who were informed by his doctors shortly after the Terrorist Bombing that Ira Weinstein would not survive his injuries, and that his death was imminent.

26. Witnessing the extreme pain and suffering of Ira Weinstein and his slow and agonizing death over a period of seven weeks, and experiencing his actual death, caused plaintiffs Susan Weinstein, Joseph Weinstein, Jennifer Weinstein Hazi and

David Weinstein great horror, distress, intimidation, anxiety, severe mental anguish and the loss of society.

27. Additionally, plaintiff Jennifer Weinstein Hazi, a licensed nurse who worked in the burn ward at Hadassah Medical Center where her father decedent Ira Weinstein was hospitalized, witnessed her father's injuries and agony for the entire seven week period.

28. Plaintiff Jennifer Weinstein Hazi directly faced and witnessed, every day for a period of seven weeks, the severe injuries, pain and suffering inflicted on her father Ira Weinstein, by defendants' actions.

29. Responsibility for the Terrorist Bombing was immediately claimed by the HAMAS terrorist organization.

30. HAMAS' involvement in the Terrorist Bombing was later confirmed by statements given to the Israeli Police by HAMAS member Hassan Salamah, who was convicted by an Israeli Court of planning the Terrorist Bombing on behalf of HAMAS.

31. HAMAS, known also as "Islamic Resistance Movement" (or in Arabic: "Harakat al-Muqawama al-Islamiyya"), is an international terrorist organization which receives routine, abundant and systematic material support and resources from defendants in furtherance of its terrorist objectives and activities, as detailed herein.

### Routine Provision of Material Support and Resources to HAMAS by Defendants

32. Since 1984 until the present time, defendant Iran has been designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6 of the Export Administration Act.

33. HAMAS is one of the international terrorist organizations to which, at all times relevant hereto, Iran provided material support and resources.

34. During the period relevant hereto, defendant Iran provided HAMAS with material support and resources within the meaning of 28 U.S.C. §1605(a)(7), in order to facilitate and further the commission of terrorist attacks by HAMAS. Such support was provided routinely and in furtherance and as implementation of a specific policy and/or practice established and maintained by defendant Iran.

35. The material support and resources provided by defendants to HAMAS within the meaning of 28 U.S.C. §1605(a)(7) includes, among other things: military and other training; training bases; facilities for, *inter alia*, training, storage of weapons and explosives and the maintenance and operation of a leadership command and operational infrastructure; safe haven; lodging; means of communication and communications equipment; financial services, including banking and wire transfer services; means of transportation; and essential utilities.

36. Defendants The Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani provided material support and resources to HAMAS on behalf of defendant Iran and

in furtherance of the policies of defendant Iran, and while acting within the scope of their office, employment and agency.

37. At all relevant times, defendant The Iranian Ministry of Information and Security was an agent, representative and/or office of defendant Iran acting within the scope of its agency and/or office.

38. At all relevant times, defendant The Iranian Ministry of Information and Security engaged in the actions described herein within the scope of its agency and/or office and to further the interests of defendant Iran.

39. At all relevant times, defendant The Iranian Ministry of Information and Security was the Iranian intelligence service, functioning both within and beyond Iranian territory.  Acting as an agent of defendant The Islamic Republic of Iran, defendant The Iranian Ministry of Information and Security, performed acts within the scope of its agency, within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C. §1605 note, which caused the death of plaintiff Ira Weinstein, in that defendant The Iranian Ministry of Information and Security acted as a conduit for Iran's provision of funds to HAMAS and training to terrorists under the direction of HAMAS, including Hassan Salamah.

40. Accordingly, defendant Iran is vicariously liable for the acts of defendant The Iranian Ministry of Information and Security.

41. At all relevant times, defendants Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani were agents, representatives, officers and employees of defendants Iran and The Iranian Ministry

of Information and Security acting within the scope of their agency, office and employment.

42. At all relevant times, defendants Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani were high officials of defendant The Islamic Republic of Iran, whose approval would be necessary to carry out the economic commitment of Iran to HAMAS and the training of terrorist in Iran.

43. At all relevant times, defendants Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani engaged in the actions described herein within the scope of their agency, office and employment and to further the interests of defendants Iran and The Iranian Ministry of Information and Security.

44. Accordingly, defendants Iran and The Iranian Ministry of Information and Security are vicariously liable for the acts of defendants Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani.

45. During the period relevant hereto, defendants provided HAMAS and its operatives with training bases and facilities on Iranian territory.

46. HAMAS and its operatives utilized the training bases and facilities provided by defendants to train for the commission of acts of terrorism. This training included the use of firearms, explosives and other weapons. HAMAS and its operatives also utilized these bases and facilities as depots for storage of weapons and explosives.

47. HAMAS and its operatives also utilized the training bases and facilities provided by defendants to establish, maintain and operate a leadership command, organizational hierarchy and operational infrastructure.

48. Additionally, at all times relevant hereto, defendants provided HAMAS and its operatives with instruction and training in terrorism activities including the use of weapons and explosives (the allegations contained in paragraphs 33-48, inclusive, collectively referred to herein as the "Terrorist Training").

49. Terrorist Training was provided to HAMAS and its operatives by and through Iranian military and intelligence officials, and other agents, employees and officials of defendants Iran and The Iranian Ministry of Information and Security acting under the command and direction of defendants.

50. In addition, at all times relevant hereto, defendants provided Terrorist Training to HAMAS and its operatives by and through the agency of other terrorist organizations which received material support and resources from defendants, and which acted as proxies and agents of defendants for the purpose of providing such Terrorist Training to HAMAS.  The terrorist organizations which provided Terrorist Training to HAMAS, on behalf of and as agents of defendants, include HIZBOLLAH and various other terrorist organizations.

51. At all times relevant hereto, defendants provided HAMAS and its leaders, officials and operatives with lodging, safe haven and shelter, in order to prevent them from being apprehended and permit them to conduct their terrorist activities freely and unhindered.

52. In order to facilitate and further the commission of terrorist attacks by HAMAS, defendants gave substantial aid, assistance and encouragement to one another and to HAMAS, and knowingly and willingly conspired, agreed and acted in concert with one another and with HAMAS, in pursuance of a common plan and design, to provide material support and resources to HAMAS.

53. Indeed, this Court recently held, in Eisenfeld v. Iran, supra, that HAMAS "received massive material and technical support from the Defendant, The Islamic Republic of Iran" (Id. at 10). The Court noted that without the assistance of Iran "it is unlikely that this attack could have resulted in such loss of life. . ." (Id.)

54. The Court also found that defendant Iran provides HAMAS financial support in the amount of $15,000,000 per month, and that it had provided training in the use of bombs and explosives to the HAMAS terrorist who planned the attack in which Ira Weinstein was killed (Id. at 5-6).

55. In light of the above, this Court found Iran and the other defendants liable under 28 U.S.C. §1605 et seq. for the extrajudicial killings of American citizens in the bombing of the Number 18 Egged bus on February 25, 1996, in Jerusalem, in which decedent Ira Weinstein was killed.

**FIRST CLAIM**
**AS AGAINST ALL DEFENDANTS**
**ON BEHALF OF DECEDENT IRA WEINSTEIN/**
**ESTATE OF IRA WEINSTEIN**
**WRONGFUL DEATH**

56. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "55" of the complaint as if set forth at length herein.

13

57. Defendants provided material support and resources to HAMAS in order to facilitate and further the commission of terrorist attacks by HAMAS and its operatives. Decedent Ira Weinstein was killed by a bomb detonated by HAMAS and its operatives acting with the material support, resources and sponsorship of defendants.

58. Defendants' actions were willful, malicious, intentional, reckless and/or unlawful and were the proximate cause of the death of decedent Ira Weinstein.

59. The murder of Ira Weinstein was an act of extrajudicial killing within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C.A. §1605 note.

60. The murder of Ira Weinstein was perpetrated by HAMAS and its operatives, which received material support and resources from defendants.

61. Such provision of material support and resources was engaged in by agents, officials, and employees of defendants Iran, including among others, defendants The Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani, while acting within the scope of their agency, office and employment.

62. At the time of his death, decedent Ira Weinstein left surviving plaintiffs Susan Weinstein, Joseph Weinstein, Jennifer Weinstein Hazi and David Weinstein (minor) as his only distributees.

63. Prior to his death, decedent Ira Weinstein was 53 years of age, enjoying good health, was industrious and in possession of all his faculties.

64. As a result of the death of decedent Ira Weinstein, his distributees have and/or will suffer pecuniary loss, and have necessarily paid funeral expenses, medical, nursing, hospital and various other expenses, and will also incur expenses in the settlement of the Estate of decedent Ira Weinstein.

65. By reason of the foregoing, decedent Ira Weinstein and the Estate of Ira Weinstein have been damaged in an amount to be determined at trial, but in no event less than the sum of fifty million ($50,000,000) dollars.

66. Defendants' conduct as described herein was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large. Decedent Ira Weinstein and the Estate of Ira Weinstein are therefore entitled to an award of punitive damages in an amount to be determined at trial.

## SECOND CLAIM
### AS AGAINST ALL DEFENDANTS
### ON BEHALF OF DECEDENT IRA WEINSTEIN/
### ESTATE OF IRA WEINSTEIN
### PAIN, SUFFERING AND SURVIVAL DAMAGES

67. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "66" of the complaint as if set forth at length herein.

68. As a result of the Terrorist Bombing caused by defendants' actions described herein, decedent Ira Weinstein, prior to his death, sustained great, severe, and permanent injuries to his body, head, and limbs, became sick, sore, lame and disabled and suffered great conscious pain, loss of society, shock and physical and mental anguish.

69. By reason of the above, decedent Ira Weinstein and the Estate of Ira Weinstein are entitled to damages in an amount to be determined at trial, but in no event less than two hundred million ($200,000,000) dollars.

70. Defendants' conduct as specified herein was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large. Decedent Ira Weinstein and the Estate of Ira Weinstein are therefore entitled to an award of punitive damages against defendants in an amount to be determined at trial.

**THIRD CLAIM**
**AS AGAINST ALL DEFENDANTS**
**ON BEHALF OF SUSAN WEINSTEIN**
**LOSS OF CONSORTIUM AND SOLATIUM**

71. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "70" of the complaint as if set forth at length herein.

72. At all relevant times, plaintiff Susan Weinstein was the lawful wife of decedent Ira Weinstein.

73. As a result, and by reason of the death of Ira Weinstein, which was caused by the actions of defendants described herein, plaintiff Susan Weinstein has been deprived of the services, society and consortium of her deceased husband, and has suffered severe mental anguish, bereavement and grief, and injury to her feelings.

74. By reason of the foregoing, Susan Weinstein has been damaged in an amount to be determined at trial, but in no event less than the sum of twenty million ($20,000,000) dollars.

75. Defendants' conduct as specified herein was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large. Susan Weinstein is therefore entitled to an award of punitive damages against defendants in an amount to be determined at trial.

**FOURTH CLAIM**
**AS AGAINST ALL DEFENDANTS**
**ON BEHALF OF JOSEPH WEINSTEIN**
**LOSS OF CONSORTIUM AND SOLATIUM**

76. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "75" of the complaint as if set forth at length herein.

77. At all relevant times, plaintiff Joseph Weinstein was the son of decedent Ira Weinstein.

78. As a result and by reason of the death of Ira Weinstein, which was caused by the actions of defendants described herein, Joseph Weinstein has been deprived of the services, society, guidance and consortium of his deceased father, and has suffered severe mental anguish, bereavement and grief, and injury to his feelings.

79. By reason of the foregoing, Joseph Weinstein has been damaged in an amount to be determined at trial, but in no event less than the sum of twenty million ($20,000,000) dollars.

80. Defendants' conduct as specified herein was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large. Joseph Weinstein is therefore entitled to an award of punitive damages against defendants in an amount to be determined at trial.

## FIFTH CLAIM
## AS AGAINST ALL DEFENDANTS
## ON BEHALF OF JENNIFER WEINSTEIN HAZI
## LOSS OF CONSORTIUM AND SOLATIUM

81. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "80" of the complaint as if set forth at length herein.

82. At all relevant times, plaintiff Jennifer Weinstein Hazi was the daughter of decedent Ira Weinstein.

83. As a result and by reason of the death of Ira Weinstein, which was caused by the actions of defendants described herein, Jennifer Weinstein Hazi has been deprived of the services, society, guidance and consortium of her deceased father, and has suffered severe mental anguish, bereavement and grief, and injury to her feelings.

84. By reason of the foregoing, Jennifer Weinstein Hazi has been damaged in an amount to be determined at trial, but in no event less than the sum of twenty million ($20,000,000) dollars.

85. Defendants' conduct as specified herein was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large. Jennifer Weinstein Hazi is therefore entitled to an award of punitive damages against defendants in an amount to be determined at trial.

## SIXTH CLAIM
## AS AGAINST ALL DEFENDANTS
## ON BEHALF OF DAVID WEINSTEIN
## LOSS OF CONSORTIUM AND SOLATIUM

86. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "85" of the complaint as if set forth at length herein.

87. At all relevant times, plaintiff David Weinstein (minor) was the son of decedent Ira Weinstein.

88. As a result and by reason of the death of Ira Weinstein, which was caused by the actions of defendants described herein, David Weinstein (minor) has been deprived of the services, society, guidance and consortium of his deceased father, and has suffered severe mental anguish, bereavement and grief, and injury to his feelings.

89. By reason of the foregoing, David Weinstein has been damaged in an amount to be determined at trial, but in no event less than the sum of twenty million ($20,000,000) dollars.

90. Defendants' conduct as specified herein was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large.  David Weinstein is therefore entitled to an award of punitive damages against defendants in an amount to be determined at trial.

### SEVENTH CLAIM
### AS AGAINST ALL DEFENDANTS
### CIVIL CONSPIRACY

91. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "90" of the complaint as if set forth at length herein.

92. Defendants knowingly and willingly conspired, planned and agreed to sponsor and provide material support and resources for the commission of acts of extrajudicial killing by terrorist organizations, including the bombing of the bus in which decedent Ira Weinstein was killed.

93. As a result and by reason of the death of Ira Weinstein, which was caused by defendants' conspiracy described herein, plaintiffs suffered damages in an amount to be determined at trial, but in no event less than three hundred thirty million ($330,000,000) dollars.  Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages.

94. Defendants' conduct as specified herein was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large.  Plaintiffs are therefore entitled to an award of punitive damages against defendants in an amount to be determined at trial

### EIGHTH CLAIM
### AS AGAINST ALL DEFENDANTS ON BEHALF OF ALL
### PLAINTIFFS VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

95. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "94" of the complaint as if set forth at length herein.

96. At all relevant times, defendants Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani were agents, officers and/or employees of defendants The Iranian Ministry of Information and Security and The Islamic Republic of Iran acting within the scope of their agency, office and/or employment.  At all relevant times, defendants Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani engaged in the actions described herein within the scope of their agency, office and/or employment and in furtherance of the interests of defendants The Iranian Ministry of Information and Security and The Islamic Republic of Iran.

97. Defendants The Iranian Ministry of Information and Security and The Islamic

Republic of Iran authorized and/or condoned the conduct of defendants Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani and HAMAS in providing material support and resources for, and in carrying out, the Terrorist Bombing.

98. Accordingly, defendants The Iranian Ministry of Information and Security and The Islamic Republic of Iran are vicariously liable for the acts of defendants Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani and Ali Fallahian-Khuzestani and HAMAS.

99. At all relevant times, defendant The Iranian Ministry of Information and Security was an agent and/or office of defendant The Islamic Republic of Iran acting within the scope of its agency and/or office.

100. At all relevant times, defendant the Iranian Ministry of Information and Security engaged in the acts described herein within the scope of its agency and/or office and to further the interest of defendant Iran. Iran authorized and/or condoned the conduct of defendant The Iranian Ministry of Information and Security.

101. Accordingly, defendant Iran is vicariously liable for the acts of defendant, the Iranian Ministry of Information and Security.

102. Defendants' conduct as specified herein was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large. Plaintiffs are therefore entitled to an award of punitive damages against defendants in an amount to be determined at trial

WHEREFORE, plaintiffs request judgment against the defendants, jointly and severally, as follows:

21

a.      On the First Claim, an amount to be determined at trial but no less than fifty million ($50,000,000) dollars, and punitive damages in an amount to be determined at trial;

b.      On the Second Claim, an amount to be determined at trial but no less than two hundred million ($200,000,000) dollars, and punitive damages in an amount to be determined at trial;

c.      On the Third Claim, an amount to be determined at trial but no less than twenty million ($20,000,000) dollars, and punitive damages in an amount to be determined at trial;

d.      On the Fourth Claim, an amount to be determined at trial but no less than twenty million ($20,000,000) dollars, and punitive damages in an amount to be determined at trial;

e.      On the Fifth Claim, an amount to be determined at trial but no less than twenty million ($20,000,000) dollars, and punitive damages in an amount to be determined at trial;

f.      On the Sixth Claim, an amount to be determined at trial but no less than twenty million ($20,000,000) dollars, and punitive damages in an amount to be determined at trial;

g.      On the Seventh Claim, an amount to be determined at trial but no less than three hundred thirty million ($330,000,000) dollars, and punitive damages in an amount to be determined at trial;

h.      On the Eighth Claim, an amount to be determined at trial but no less than three hundred thirty million ($330,000,000) dollars, and punitive damages in an amount to be determined at trial;

i.      On all causes of action, an award of attorneys' fees, costs and disbursements, together with such other, further and different relief the Court deems just, proper and equitable.

Dated: Washington, D.C.
October 27, 2000

Yours, etc.
Mintz, Levin, Cohn, Feris, Glovsky and
Popeo, P.C.

By: _____
William A. Davis ( 422108)
Attorneys for Plaintiffs
701 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004-2608
(202) 434-7300

Westerman Shapiro Draghi & Miller, LLP

By: _____
Jeffrey A. Miller (JAM:6352)
Attorneys for Plaintiffs
600 Old Country Road, Suite 500
Garden City, New York 11530
(516) 622-9200
Special Counsel
Joshua A. Adler, Esq.(JA:8834)

23